**WEST MOUNTAIN SALES, INC., Plaintiff,**

v.

**LOGAN MANUFACTURING CO., a Successor in Interest to the Logan Division of DeLorean Manufacturing Company; Roy Nesseth; Thomas G. Sanford; Paul A. Brandt and Gerald Scholl, Defendants.**

No. 88–CV–0698.

United States District Court, N.D. New York.

Aug. 25, 1989.

Ainsworth, Sullivan, Tracy, Knaupf, Warner and Ruslander, Albany, N.Y., for plaintiff; Timothy J. O'Connor, of counsel.

Whiteman, Osterman & Hanna, Albany, N.Y., for defendants Logan Mfg. Co., Roy Nesseth, Thomas G. Sanford and Gerald Scholl; Michael Whiteman, of counsel.

Dreyer, Kinsella, Boyajian, & Tuttle, Albany, N.Y., for defendant Paul Brandt; William J. Dreyer, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

Presently before the court are defendants' motions to dismiss the instant action. In addition, defendant Paul Brandt moves for sanctions under Fed.R.Civ.P. 11. The court heard argument on the motions on January 30, 1989.

## BACKGROUND

This action was commenced on June 23, 1988. Plaintiff, West Mountain Sales, Inc. ("West Mountain"), filed a complaint which listed seven causes of action: six are state law causes of action and one, the third cause of action, alleges a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Defendants in this action are Logan Manufacturing Company ("Logan"), which is the successor in interest to the Logan Division of DeLorean Manufacturing Company, Roy Nesseth, who is the Assistant/Deputy Chairman of the Board of Logan, and Thomas Sanford, Paul Brandt and Gerald Scholl. The last three are alleged to be agents of Logan. The tenor of the complaint is that defendants interfered with plaintiff's exclusive distributorship agreement to sell the equipment of DeLorean Manufacturing Co., Logan Division.

The facts as set out are gleaned from the complaint. In August of 1980 plaintiff entered into an exclusive distributorship agreement with DeLorean Manufacturing Co., Logan Division. By September of 1984 plaintiff's exclusive territory included New York State, with the exception of New York City and Long Island, Connecticut, Rhode Island, Massachusetts, Vermont, New Hampshire and Maine. Plaintiff alleges upon information and belief that in January of 1988 defendants commenced an ongoing scheme to defraud it. Complaint ¶ 53. The complaint includes allegations that defendants took delivery of a check which was properly payable to plaintiff, filed financing statements against equipment previously sold by plaintiff and solicited business in plaintiff's exclusive territory.

With one exception, the alleged fraudulent acts terminated in May of 1988. See Complaint ¶¶ 16, 22, 26, 28, 31, 33, 35, and 36. The exception is contained in paragraph 24 of the complaint which states that "[c]ommencing on or about April 1, 1988 and continuing to the present date, the defendants NESSETH, BRANDT and SCHOLL have intentionally and wrongfully made numerous representations to Mr. John Vorel of King Ridge, a valued customer of the plaintiff corporation, that the plaintiff corporation was no longer the exclusive distributor of equipment of LOGAN manufacture...."

On April 1, 1988, plaintiff filed a voluntary bankruptcy petition in this district. Complaint ¶ 53. Soon thereafter, on May 13, 1988 the Honorable Justin J. Mahoney, United States Bankruptcy Judge, entered an Order which directed, among other things, that West Mountain was to pay Logan $1,236,409.00 on or before May 27, 1988 or forfeit its exclusive dealership

rights.[1] There is no allegation in the complaint that West Mountain paid the required sum to Logan on or before May 27, 1988.[2]

## DISCUSSION

■ To properly state a cause of action in civil RICO West Mountain must allege a violation of the substantive RICO statute and an injury by reason of a violation of that statute. West Mountain must also allege the existence of an enterprise which affects interstate or foreign commerce; that the persons sought to be held liable were employed by or associated with that enterprise; and that the persons sought to be held liable participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. *James v. Meinke,* 778 F.2d 200, 204 (5th Cir.1985). With respect to the pattern requirement, the complaint must set forth two or more acts of racketeering which have sufficient interrelationship and sufficient continuity or threat of continuity to constitute a pattern. *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989) (en banc).

The court's analysis will focus on the continuity or threat of continuity requirement. The Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), recently spoke on this issue. The Court stated:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* at ——, 109 S.Ct. at 2901; *see id.* at n. 4. Relevant, then, to the continuity requirement is the time span over which the racketeering acts are alleged to have occurred.

■ In the case at bar, the complaint alleges that the racketeering activity commenced in January of 1988. Complaint ¶ 53. Yet no specific predicate act is given as having occurred in January of 1988. The first actual date of fraud alleged is February 2, 1988. Complaint ¶ 16. Even though paragraph 16 does not refer to a specific act, the court will consider for the sake of argument that this allegation meets the pleading requirements of Fed.R. Civ.P. 9(b). On the motions to dismiss the court will view February 2, 1988 as the date of the first predicate act.

Next the court will address the issue of the last possible date for a predicate act. The complaint in essence alleges that defendants fraudulently misrepresented the propriety of dealing in Logan equipment in areas subject to the exclusive dealership agreement. However, Judge Mahoney's Order stated that the exclusive dealership rights would terminate if West Mountain did not forward $1,236,409.00 to Logan on or before May 27, 1988.[3] Thus, if plaintiff were to allege that the racketeering acts extended beyond May 27th, it would have to allege that it paid Logan on or before that date. It has not done so, nor can it. *Supra* note 2. As a result, the court will consider May 27, 1988 as the last possible date for the execution of a predicate act.

This conclusion is in substantial accordance with the complaint which on the whole alleges that the last predicate acts occurred in May 1988. Complaint ¶¶ 16, 22, 26, 28, and 33. Paragraph 24 does contend that defendants Nesseth, Brandt and Scholl

---

**1.** This fact is not contained in the complaint. The Order has been attached to the moving papers of defendants Logan, Nesseth, Sanford and Scholl. *See* Docket Document ("Doc.") 5.

**2.** Nor could there be such an allegation. Plaintiff's counsel states in an affidavit that "West Mountain Sales, Inc. was effectively deemed the exclusive distributor of snow grooming machinery of Logan Manufacturing Company manufacture until May 28, 1988, upon which date said

exclusive distributorship was deemed rejected and void for the failure of West Mountain Sales, Inc. to cure a pending default in payments." Affidavit of Timothy J. O'Connor, Doc. 8 at ¶ 8.

**3.** The court may properly consider Judge Mahoney's Order on the motions to dismiss. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969); *id.* § 1364, at 668–73.

made misrepresentations to a customer of West Mountain, and that these misrepresentations continued "to the present date."[4] Even assuming the truth of that statement, the complaint was signed on June 21, 1988, adding at most a month to the allegations of racketeering activity. Yet, because of the termination of the exclusive dealership agreement, the court concludes that the complaint can only fairly allege predicate acts spanning from February 2, 1988 through May 27, 1988, that is, over a period of less than four months.

Under the Supreme Court's decision in *H.J. Inc.* this period of less than four months is not sufficient to allege continuity. —— U.S. at ——, 109 S.Ct. at 2901; *compare id.* at ——, 109 S.Ct. at 2905 ("a 6–year period … may be sufficient to satisfy the continuity requirement"); *The Proctor & Gamble Co. v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 18 (2d Cir.1989) (allegations of numerous predicate acts occurring over nearly a two year period held sufficient to withstand a motion to dismiss). Additionally, the complaint lacks allegations of a threat of continuity. The RICO claim presents a scenario in which defendants fraudulently misrepresented the propriety of conducting business in the territory which was governed by the exclusive dealership agreement. However, after the nullification of that agreement, there could not be further, similar misrepresentations. In short, there is no threat of continuity.

Aside from its continuity deficiency, the complaint suffers from other flaws. As defendants have pointed out, many of the allegations are too conclusory to meet the standard set by Fed.R.Civ.P. 9(b). This, in turn, makes it more difficult to determine whether West Mountain has alleged, as it must, that each defendant participated in at least two RICO predicate acts. *See United States v. Persico*, 832 F.2d 705, 713

(2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1995, 1996, 100 L.Ed.2d 227 (1988); *United States v. Teitler*, 802 F.2d 606, 612–13 (2d Cir.1986); *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Moreover, it appears that plaintiff has taken a breach of contract claim and "attempted to bootstrap it into a 'federal case' by couching the allegations in RICO statutory language." *Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Savings & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir.1989); *see Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir.1989); *Maussner v. McCormick*, 653 F.Supp. 131 (W.D.N.Y.1986).

■ In light of the foregoing discussion, the court concludes that the defects in the complaint's allegations of continuity or threat of continuity cannot be cured; consequently, the RICO cause of action is dismissed with prejudice to repleading. *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Since the remaining causes of action are all based on state law, they are dismissed without prejudice pursuant to the doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ Defendant Paul Brandt has moved for sanctions under Fed.R.Civ.P. 11. Defendant Brandt addresses this motion to the plaintiff, but the real object seems to be his brother, Claude, who as Vice President of West Mountain, apparently commenced this action. Both men have been before the court previously. *Brandt v. Brandt*, 88–CV–1111 (N.D.N.Y.). From that encounter the court recognizes that there is animosity between the two. In reviewing this motion, the court has reviewed the affidavits of Claude and Lorraine Brandt. Docs. 9 and 11. These provide bases for the allegations contained in

---

4. The allegations in this paragraph are not stated with sufficient particularity. Fed.R.Civ.P. 9(b); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 19 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. International Brotherhood of Teamsters*, 708 F.Supp. 1388, 1395–96 (S.D.N.Y.1989) (Rule 9(b)

applies to fraud allegations in RICO claims). Furthermore, to the extent paragraph 24 presents plaintiff's own legal conclusions and characterizations, it cannot be considered by the court on a motion to dismiss. *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989).

the complaint. Thus it appears that Claude Brandt, through West Mountain, was not launching an action ungrounded in fact.

To hold West Mountain liable under Rule 11, defendant must show that it, or its officers, acted in bad faith. *Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 934 (2d Cir.1989), *modified*, 875 F.2d 39 (2d Cir. 1989). Given the production of and explanation of the factual bases for the complaint the court will not hold West Mountain liable for Rule 11 sanctions. In gauging whether plaintiff's attorneys are to be liable under Rule 11, the court must apply an objective test. *Id.* In light of the factual basis produced in the affidavits of Claude and Lorraine Brandt this court concludes that the attorneys' representation of the facts is objectively reasonable, and, consequently, not sanctionable.

With respect to the law, the court will make two comments. First, it is true that the complaint is grossly conclusory. Nonetheless, this could have been corrected subsequent to a motion under Rule 9(b). In fact, if Rule 9(b) defects were the sole reason for dismissing the complaint the court would be bound to give plaintiff an opportunity to replead. *Schreiber Distrib. Co.*, 806 F.2d at 1401. Consequently, the court does not believe that failing to plead fraud with particularity in and of itself is sanctionable. Second, the substantive law of RICO has dramatically changed since the drafting of the complaint. Not only has the Second Circuit significantly revised its conception of the statute, *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc); *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989) (en banc), but the Supreme Court less than two months ago issued a decision which has guided this court's resolution of the motions to dismiss. Insofar as the complaint states a RICO claim, the court will not hold the filing to be objectively unreasonable. *Cf. United States v. Sweeney*, 878 F.2d 68 (2d Cir. 1989) (mistake of defendant's attorney regarding new Sentencing Guidelines did not constitute ineffective assistance of counsel because of the newness of the Guidelines). The motion for sanctions is denied.

In sum, the third cause of action is dismissed with prejudice. The other causes of action are dismissed without prejudice. The motion for Rule 11 sanctions is denied. The clerk of the court is instructed to enter judgment in accordance with this Memorandum–Decision and Order.

It is So Ordered.