Willie J. WOOLFOLK, Plaintiff,

v.

Keith THOMAS; Robert Thomas, Individually and in his official capacity as a Police Officer of the City of Binghamton, New York Police Department; James T. O'Neil, Individually and in his official capacity as Chief of Police of the City of Binghamton, New York Police Department; Patrick H. Matthews, Individually and in his official capacity as District Attorney for Broome County; and the City of Binghamton, New York, Defendants.

No. 89–CV–656.

United States District Court, N.D. New York.

Dec. 8, 1989.

Stone and Stone, Philadelphia, Pa., for plaintiff (Michelle Stone and Allen Stone, of counsel.)

Joseph James Slocum, Broome County Atty., Binghamton, N.Y., for defendant Patrick H. Matthews (Alfred Paniccia, Jr., of counsel.)

Kramer, Wales & Wright, Binghamton, N.Y., for defendants, City of Binghamton, James T. O'Neil, and Robert Thomas (Roger N. Lavinsky, of counsel.)

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

On December 1, 1989 in the instant case, the court heard argument on motions to dismiss brought by all of the defendants, except Keith Thomas. The court reserved decision on the motions and this Memorandum–Decision reflects the court's resolution of the motions.

## FACTS

Plaintiff, Willie J. Woolfolk, filed a complaint, commencing this action on May 23, 1989. The complaint presents allegations of racially motivated actions of several government officials, and a private citizen, in Binghamton, New York. Plaintiff contends that he was assaulted by defendant Keith Thomas, proprietor of a now-defunct "juice bar" and his brother, Robert Thomas, a Binghamton police officer. The complaint alleges that the assault occurred at the bar when plaintiff confronted Keith Thomas regarding purported drug deals on the premises which involved plaintiff's daughter.

One of the focuses of the complaint reflects plaintiff's ire that, although Keith Thomas was prosecuted by defendant Matthews for the alleged assault, Robert Thomas, the police officer, was not. Consequently, there is a claim that this failure to prosecute violated plaintiff's constitutional rights. In addition, plaintiff asserts

other constitutionally based claims, including an excessive force claim. The complaint also recites pendent state law claims. The federal claims are brought under 42 U.S.C. §§ 1981, 1983, and 1985. Plaintiff has named as defendants in the action: Keith Thomas, Robert Thomas, James T. O'Neil, who is the Binghamton Chief of Police, and Patrick Matthews, who was the Broome County District Attorney and is now a judge in County Court. The last named defendant is the City of Binghamton.

Plaintiff was recently on trial for bribing a witness not to appear at a trial. That trial, for bribing a witness not to appear, ended on September 2, 1989 in a hung jury. The trial for which the witness (indeed) failed to appear was one in which plaintiff was going to be tried on charges of attempted bribery. Under the allegations of the first bribery indictment, plaintiff had attempted to bribe an individual, Robert Marshall, to falsely testify at the trial of Keith Thomas, one of the assailants.

All defendants, except Keith Thomas, have entered an appearance in the action. The four defendants who have entered appearances move to dismiss the complaint.

## DISCUSSION

██ The primary ground set forth in defendant Matthew's motion to dismiss is the absolute immunity accorded to a prosecutor. The gravamen of plaintiff's claims against defendant Matthews relates to his failure to prosecute defendant Robert Thomas. However, in *Schloss v. Bouse*, 876 F.2d 287 (2d Cir.1989), the Second Circuit held that absolute immunity protects a prosecutor from damages suits based on the prosecutor's decision not to prosecute. *Id.* at 290. Insofar as the complaint only asserts that defendant Matthews' failure to prosecute Robert Thomas violated plaintiff's constitutional rights, the claims against defendant Matthews must be dismissed.

On brief and at oral argument, plaintiff's counsel argued that, in addition to defendant Matthew's failure to prosecute, defendant Matthews failed to adequately investi-

gate plaintiff's allegations that defendant Robert Thomas assaulted him. This, too, is claimed to violate plaintiff's constitutional rights, presumably, his right to equal protection under the law. *See* U.S. Const. Amend. XIV. As an initial matter, the court observes that this allegation is not contained in the complaint, and accordingly cannot save from dismissal the present claims lodged against defendant Matthews. However, the court will address the investigation issue because it has been thoroughly briefed by both sides and because its resolution affects whether the claims against defendant Matthews will be dismissed with or without prejudice. *See West Mountain Sales, Inc. v. Logan Mfg. Co.*, 718 F.Supp. 1084, 1087 (N.D.N.Y.1989) (dismissal with prejudice is warranted where a complaint's defects cannot be cured).

■ While some investigative tasks of a prosecutor are entitled to absolute immunity, others are only entitled to qualified immunity. *Barbera v. Smith*, 836 F.2d 96 (2d Cir.1987), *cert. denied*, — U.S. —, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The investigative tasks entitled to absolute immunity are those which are "sufficiently closely related to the litigation function for which the common law immunity doctrine was developed." *Id.* at 100; *see Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976). In *Barbera* the court held that when a prosecutor prior to trial *acquired* evidence, those actions were of a police nature and only qualified immunity attached. 836 F.2d at 100; *accord Gobel v. Maricopa County*, 867 F.2d 1201, 1204 (9th Cir.1989) (nonprosecutorial, police-type, investigatory roles are not entitled to absolute immunity, e.g., initial investigations). At issue in the case at bar, however, is the defendant's unwillingness to acquire evidence. Thus, the result in *Barbera* does not dictate the result in the case at bar. In fact, plaintiff

asserts that some investigation did occur. *See* Plaintiff's Memorandum in Opposition, Document ("Doc.") 13 at 3. Therefore, defendant Matthews alleged failure to investigate could most aptly be described as an *evaluation* of the evidence before him. Evaluation of evidence is a species of prosecutorial conduct for which the *Barbera* court expressly declined to preclude an entitlement to absolute immunity. *Id.* at 100–01; *see Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33.

■ In this court's opinion the decision *not* to investigate is "sufficiently closely related" to the decision *not* to prosecute so as to qualify defendant Matthew's decision for absolute immunity. Some aspects of investigation are not so immune. For instance, the Second Circuit has held that authorizing wiretaps, or assisting in the execution of a search and seizure are active investigative actions not entitled to absolute immunity. *Barbera*, 836 F.2d at 100 (citing cases). By contrast, a prosecutor's decision not to investigate is tantamount to a decision not to prosecute.[1] Since the latter is entitled to judicial immunity, *Schloss*, 876 F.2d at 290, the former should be as well. Put differently, if the decision not to prosecute is entitled to absolute immunity and the decision not to investigate is only entitled to qualified immunity, then a plaintiff may simply avoid a defense of absolute immunity by pleading a failure to adequately investigate. The court holds that, even given the latest accusations of "investigative wrongdoing," defendant Matthews is entitled to absolute immunity. Because it appears that the defects in the claims asserted against defendant Matthews cannot be cured, the court dismisses the claims against him with prejudice.

Defendants Robert Thomas, James O'Neil and the City of Binghamton, to whom the court will collectively refer to as

---

1. The court does not employ a standard under which, in investigative areas, inaction is entitled to absolute immunity and action is only entitled to qualified immunity. Such a standard is inappropriate. As the Second Circuit held in *Schloss,* the decision of an Assistant United States Attorney ("AUSA") not to provide police protection only entitled that AUSA to qualified immunity. 836 F.2d at 101. As further discussed in the text, *see supra* text at 1282–1283, this court is nonetheless convinced that *Schloss* is distinguishable from the case at bar. A decision to provide police protection is not closely related to a litigation function. The decision not to investigate is; it reflects a decision not to prosecute.

"the Binghamton defendants," have moved to dismiss for improper service of process. The City of Binghamton contends that the method of service, by mail, was improper; all three of these defendants maintain, in any event, that service was untimely. In response, plaintiff seeks the court's permission to extend the time to serve summonses on the defendants.

The court concludes that the timeliness issue is dispositive and only addresses that issue. Under Fed.R.Civ.P. 4(j) service of process must be made within 120 days after the filing of the complaint. If service is untimely, the complaint is to be dismissed without prejudice as to the defendant or defendants who were not timely served. Fed.R.Civ.P. 4(j). The complaint in this action was filed on May 23, 1989. However, service of process on the Binghamton defendants was not completed within 120 days after May 23rd, a fact which plaintiff does not dispute. Consequently, in order to avoid dismissal, plaintiff must demonstrate good cause why he or his counsel did not effect timely service. Fed.R.Civ.P. 4(j); *see Burks v. Griffith*, 100 F.R.D. 491, 492 (N.D.N.Y.1984). Plaintiff's counsel assert three reasons why service was not timely. They maintain that late service was justified because they were both engaged in a criminal trial, because that criminal trial related to the present case and they were waiting to determine if there would be any collateral estoppel effect, and because they were hesitant to serve defendant Matthews who is now a County Court Judge for fear of jeopardizing plaintiff's criminal case.

Attorney inadvertence or negligence do not constitute good cause under Rule 4(j). *Delicata v. Bowen*, 116 F.R.D. 564, 566 (S.D.N.Y.1987). This court can only interpret the first reason given—that counsel were occupied with another trial—to be the equivalent of inadvertence or negligence. The reason, on its face, is insufficient to demonstrate good cause. In fact, even

upon review of the facts as set forth in counsels' affidavit, the first reason does not withstand scrutiny. Counsel assert that they were too busy to serve the summons because of a three week trial. Even incorporating time for trial preparation, the occurrence of a three week trial does not explain the inability to serve process over a 17 week period of time.

The second reason, relating to collateral estoppel, is equally mystifying. The purpose of Rule 4(j) is to encourage prompt movement of civil cases in federal court. *Delicata,* 116 F.R.D. at 565. Plaintiff's assertion that defendants would be entitled to invoke collateral estoppel does not explain why he should be permitted to delay service of process and delay presentation to the court of possible motions to dismiss based on other defenses, known or unknown to plaintiff.[2] Plaintiff's delay in service hindered, rather than assisted, the goals of Rule 4(j). Moreover, as asserted by counsel for the Binghamton defendants at oral argument and as plaintiff does not dispute, the criminal trial was completed on September 2, 1989. *See* Plaintiff's Memorandum in Opposition, Doc. 13 at 3. Thus, service could have been effectuated after completion of the trial and still have been accomplished within the 120 day time period provided for in Rule 4(j), which expired September 20, 1989. In addition, if counsel were concerned that a future criminal trial would have a collateral estoppel effect, they had time after the first trial's completion to request, pursuant to Fed.R.Civ.P. 6(b), an extension of time within which to effectuate service.

Plaintiff does not rely heavily on his final argument that service of process would have antagonized Judge Matthews and, therefore, adversely affected his criminal trial. The court finds this argument as unpersuasive apparently as does plaintiff himself. Not only is this argument sheer speculation, it is an attempt to obscure the

**2.** At oral argument, plaintiff's counsel stated in no uncertain terms that, if plaintiff is convicted on the bribery charges, defendants may use that conviction to collaterally estop litigation of the central issue in the instant action. Specifically, counsel asserted that one of plaintiff's defenses to the charges of bribery is that the charges stem from the same alleged equal protection violations which are before this court in the instant action.

policy behind Rule 4(j). The good cause provision in Rule 4(j) is not intended to be a security blanket behind which a shy plaintiff may hide. It is appropriately invoked when there have been "reasonable efforts to effectuate service." *Reed Holdings Inc. v. O.P.C. Corp.*, 122 F.R.D. 441, 444 (S.D. N.Y.1988). Plaintiff does not contend that there were *any* efforts at service prior to the expiration of the 120 day deadline.

Once an action is filed, a plaintiff is obligated to move the litigation along, pursuant to Rule 4(j). *See also* Rule 11 of the Northern District of New York (Dismissal for Want of Prosecution). If plaintiff felt that it was unwise to sue Judge Matthews because of the pending criminal litigation, he should have deleted Judge Matthews' name from the complaint, voluntarily dismissed the action, or never filed it. The court is left with the impression that the three reasons given for late service of process are nothing but *post hoc* rationalizations. Attorney negligence alone appears to be the cause. Accordingly, the court dismisses the complaint without prejudice insofar as it names the Binghamton defendants.

As a final matter, the court *sua sponte* dismisses without prejudice plaintiff's claims against defendant Keith Thomas. The only allegations made against defendant Keith Thomas are that he assaulted plaintiff. There is no allegation that he acted under color of state law, *see* 42 U.S.C. § 1983, nor conspired with others to deprive plaintiff of equal protection of the law, *see* 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), nor conspired or colluded with individuals acting under color of state law. *See, e.g.*, *Colombrito v. Kelly*, 764 F.2d 122, 132 (2d Cir.1985). While the complaint alleges that Keith Thomas assaulted plaintiff jointly with his brother the policeman, there is no allegation that this combined beating clothed Keith Thomas in the authority of state law. *Compare Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (holding that when a state and a creditor act jointly to attach a debtor's property, the creditor acts under color of state law). The court is, thus, unable to identify the basis for any federal claim brought against Keith Thomas.

■ However, since plaintiff has not addressed this point, it is more equitable to decide the *sua sponte* dismissal on an argument to which plaintiff has already responded. To be specific, the court notes that the acknowledgement of service returned by Keith Thomas states that service was mailed to him on September 21, 1989, 121 days after the complaint was filed. Thus, as with the Binghamton defendants, it is not possible that plaintiff served process in a timely fashion on defendant Keith Thomas. As evidenced by the discussion with respect to the Binghamton defendants, late service of process was raised by other defendants to this action. Since plaintiff was on notice of this contention, the court may properly address it insofar as it relates to Keith Thomas. *See Jim Forno's Continental Motors, Inc. v. Subaru Distributors Corp.*, 649 F.Supp. 746, 749 n. 1 (N.D.N.Y.1986); *see also Fountain v. City of New York*, 86 Civ. 3153, slip op., 1986 WL 14919, available on LEXIS (S.D.N.Y.1986). Since the process of service on Keith Thomas was untimely, and since no good cause has been shown for the late service of process, the court dismisses the complaint without prejudice insofar as it names Keith Thomas.

## CONCLUSION

For the foregoing reasons, the claims against the Binghamton defendants are dismissed without prejudice. The claims against Keith Thomas are dismissed without prejudice. The claims against defendant Matthews are dismissed with prejudice. The clerk is instructed to enter judgment accordingly.

It is So Ordered.